Appellant was convicted and fined for petit larceny in violation of a Mobile city ordinance in the Municipal Court of Mobile. From this conviction, appellant received a trial de novo in the Mobile County Circuit Court. Appellant entered a plea of not guilty and represented himself throughout the proceedings. Following a trial before a jury, appellant was found guilty of petit larceny and fined $25.00. In addition, the trial judge imposed four days jail time. No jail time was imposed in the Municipal Court.
Appellant contends now that the trial judge erroneously allowed him to represent himself in that the judge did not ascertain whether or not appellant's waiver of counsel was knowing and intelligent.
Before the appellant's trial began, the following occurred.
From the record:
"THE COURT: You are George T. Clark?
"DEFENDANT: Yes, sir.
"THE COURT: How old are you, Mr. Clark?
"DEFENDANT: Thirty-seven.
 "THE COURT: You are charged with a City complaint; the City says that you did unlawfully take and carry away one magic marker Hi-light of the value of twenty-five cents, the personal property of Montgomery Ward; that charges the violation known as petit larceny. Do you have an attorney?
"DEFENDANT: I do not have an attorney.
"THE COURT: Are you employed?
"DEFENDANT: Not employed at the present.
 "THE COURT: You're a man of some considerable means, though; aren't you? In other —
 "DEFENDANT: I have money to take care of my bills at the present, Your Honor.
 "THE COURT: In other words, you from time to time have employed attorneys, have you?
"DEFENDANT: Very definitely.
 "THE COURT: And you did have Mr. Alidor, but I believe you told Mr. Alidor that you could handle your jury case as well as — well, maybe satisfactorily anyway, did you?
 "DEFENDANT: I told him I would get by; I'm sure I'll make many mistakes and errors. If the Court will bear with me, I'll try to do the best I —
 "THE COURT: You are not applying to this Court as being, say, an indigent person; are you?
"DEFENDANT: No, I'm not.
 "THE COURT: All right. Now, do you realize that if you were convicted of this offense — do you realize that this City Ordinance would carry with it a punishment; that a jury could impose a fine of up to $200.00; and do you realize that this Court if it saw fit, in addition to anything the jury did, could impose confinement in the City Jail of up to thirty days?
"DEFENDANT: Yes, I realize that?
"THE COURT: You realize that?
"DEFENDANT: Yes, sir.
 "THE COURT: And you are willing to submit your case to a jury and handle it yourself?
"DEFENDANT: Yes, sir.
 "THE COURT: All right. Now to this charge of petit larceny, how do you plead — guilty or not guilty?
"DEFENDANT: Not guilty.
 "THE COURT: All right. And I believe you have asked for a trial by jury?
"DEFENDANT: Yes, sir."
It is undeniable that the State cannot force a lawyer upon a defendant in a criminal trial, where the defendant has voluntarily and intelligently elected to proceed without counsel. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525,45 L.Ed.2d 562; Beckley v. State, Ala.Crim.App., *Page 677 333 So.2d 875. However, in order to competently choose self-representation, the defendant should be "made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." Adams v. United States ex rel.McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268.
We think that the record supports a finding that appellant knowingly and willingly waived his right to be represented by counsel. This case presents a factual situation very close to that of King v. State, 55 Ala. App. 306, 314 So.2d 908, cert. denied 294 Ala. 762, 314 So.2d 912.
There, the defendant contended that the record must show accused was offered counsel but intelligently and understandingly rejected the offer. This Court stated:
 "The question is not whether the trial judge adhered to a specific procedure but whether accused was competent to exercise an intelligent, informed judgment. United States v. McGee, 7 Cir., 242 F.2d 520." King, supra, at 909.
In King, supra, no interrogation of the defendant by the trial judge appeared on the record. However, a knowing and intelligent waiver of counsel was inferred from the record as a whole and from the fact that defendant was not a newcomer to the criminal judicial process.
Mr. Clark stated that he had employed attorneys on previous occasions. He first employed counsel in this case but decided that he did not need his service prior to trial. From his conduct at trial, it can be readily inferred that appellant was familiar with the trial process. He filed a motion to produce, requested a jury trial, cross-examined witnesses, made objections to questions which were sustained, presented evidence, made opening and closing statements, and requested numerous jury instructions, several of which were given. Several times he made reference to the fact that this was a trial "de novo."
Following conviction appellant filed a motion to dismiss. At this time he was represented by counsel. Appellant stated that he had elected to represent himself at trial.
As this Court stated in King, supra, the problem presented by such a case as this one could constitute a "built-in error." Had appellant not been allowed to represent himself at the trial below, he could now easily argue that he had been denied his right to do so under Faretta, supra.
Next appellant argues that the trial court erroneously added four days imprisonment to the jury-imposed fine of twenty-five dollars. He argues that there had been no showing of any change of circumstances between conviction in the inferior court and conviction in the circuit court.
Appellant bases his contention on the rule of North Carolinav. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656. There the Supreme Court of the United States held that violation of due process resulted when a defendant received a greater punishment after having succeeded in obtaining a new trial following conviction. The violation of due process results where no factual data is made of the record in new trial, which serves as a justification for the imposition of the increased sentence.
Appellant correctly interprets Pearce, supra. However, that case is not applicable to the present case on this appeal.Colten v. Commonwealth of Kentucky, 407 U.S. 104,92 S.Ct. 1953, 32 L.Ed.2d 584, controls the question raised by the appellant.
In Colten, supra, the defendant was charged with a misdemeanor and tried in an inferior court, where he received a fine of ten dollars. Defendant then "appealed" to a court of general criminal jurisdiction by means of a trial de novo. There the defendant was convicted and punishment was a fine offifty dollars. The United States Supreme Court held that this did not constitute a violation of due process.
Kentucky, as does Alabama, allows a trial de novo as a right as long as the defendant applies within the statutory time. For an *Page 678 
explanation of the function and procedure of the trial de novo, see Diane Yarbrough v. City of Birmingham, Ala.Cr.App.,353 So.2d 75, 1977, wherein we said:
 "In Guin v. City of Tuscaloosa, 21 Ala. App. 61, 106 So. 64, 66, certiorari denied, 213 Ala. 685, 106 So. 67, the Court held that a `trial de novo' means that the Circuit Court `assumes control of the case afresh or anew with all the powers, privileges, duties, responsibilities, and authority that was vested by law in the recorder while the case was pending in said recorder's court.' A trial de novo means that the slate is wiped clean and a trial in the Circuit Court is had without any consideration being given to prior proceedings in another Court.
 "When a case is appealed to the Circuit Court for a trial de novo the judgment in the Recorder's Court is only a step toward the jurisdiction of the Circuit Court and such judgment is of no effect if the Circuit Court makes final disposition of the case. The judgment of the Recorder's Court is reinstated by the Circuit Court only where the appeal is dismissed. Anthony v. City of Birmingham, 240 Ala. 167, 198 So. 449."
Examining the trial de novo in Kentucky, the United States Supreme Court wrote in Colten, supra:
 "Our view of the Kentucky two-tier system of administering criminal justice, however, does not lead us to believe, and there is nothing in the record or presented in the briefs to show, that the hazard of being penalized for seeking a new trial, which underlay the holding of Pearce, also inheres in the de novo trial arrangement. Nor are we convinced that defendants convicted in Kentucky's inferior courts would be deterred from seeking a second trial out of fear of judicial vindictiveness. The possibility of vindictiveness, found to exist in Pearce, is not inherent in the Kentucky two-tier system.
 "We note first the obvious: that the court which conducted Colten's trial and imposed the final sentence was not the court with whose work Colten was sufficiently dissatisfied to seek a different result on appeal; and it is not the court that is asked to do over what it thought it had already done correctly."
The same reasoning readily applies to the case at bar and Alabama's trial de novo procedure. Thus the imposition of four days jail time in addition to a fine of twenty-five dollars was not error. See also State v. Royal, 113 N.H. 224, 305 A.2d 676.
Appellant also argues that the Circuit Court never acquired jurisdiction of his case because the City of Mobile failed to file with the Court the original complaint against him. In support of his contention, appellant cites Title 37, Section 587, Code of Alabama 1940, which states in pertinent part:
 "When an appeal is taken, as provided for herein, said appeal shall be filed by the city in the court to which said appeal is returnable within sixty [60] days; and if the city shall fail to file said appeal within said time, the city shall be deemed to have abandoned the prosecution of said cause, and the defendant shall not be required to further answer or appear, and the bond shall thereafter be void."
Further, Title 13, Section 428 (1) Code of Alabama 1940 states:
 "When an appeal is taken under Section 428 of this title from a conviction in a criminal case tried before a justice [or judge] of the peace or court of like jurisdiction, the justice or judge shall file with the clerk of the court to which the appeal is taken all papers and documents pertaining to the case, within sixty [60] days from the filing of the appeal bond. In the event such papers and documents are not filed within the time allowed by this section, prosecution of the defendant will be deemed to have been dismissed or abandoned, and the defendant discharged."
This question was resolved in Chaney v. City of Birmingham,246 Ala. 147, 21 So.2d 263. There, in responding to questions certified to them by the Alabama Court of Appeals, the Alabama Supreme *Page 679 
Court, through Justice Simpson writing for the full Court, held that a judgment on trial de novo is not rendered void for want of jurisdiction where the original complaint (affidavit) is not in the record. The defendant must demand that the written complaint be given him prior to trial or he waives this right and cannot raise it for the first time on appeal. Jurisdictional recitals in the appeal bond (which is present in the record of this case) give the Court to which the trial de novo "appeal" is taken jurisdiction of the case. Thompson v.City of Huntsville, 57 Ala. App. 607, 329 So.2d 664, cert. denied 295 Ala. 425, 329 So.2d 666.
Here the City Solicitor filed an unsworn complaint charging appellant with petit larceny. Prior to trial appellant affirmatively agreed to proceed to trial upon the Solicitor's complaint. This case comes squarely under the facts and law ofChaney, supra. See also Miller v. City of Birmingham,44 Ala. App. 628, 218 So.2d 281.
Neither can appellant argue that the Solicitor's complaint does not apprise him of the nature of the charge against him.Chaney, supra; Miller, supra.
The ordinance of the City of Mobile under which appellant was charged and convicted is as follows:
"Sec. 41-59. State Misdemeanors.
 "It shall be unlawful for any person to violate within the City or within the police jurisdiction thereof any law of the state, now or hereafter enacted, the violation of which is a misdemeanor under state law." (Code 1955, Section 36-63.)
We now examine the sufficiency of the evidence which appellant raised by means of a motion for new trial.
Raymond McDade testified that on February 25, 1977, he was employed by Montgomery Ward as a store detective. At approximately 6:30 p.m., McDade stated, he saw appellant pick up a Hi-Lighter marker which was in a plastic package. Appellant ripped open the package and walked behind a "Gondola", which was a display stand, McDade stated, and began to walk out of that department area. McDade noticed that appellant had his hand in his pocket.
McDade walked over to the spot where he had seen appellant drop something. There he found an empty Hi-Lighter package. McDade followed appellant outside of the store and confronted him. Appellant claimed he did not have the pen.
Appellant and McDade walked back to the display case for the pens. Appellant picked up a yellow magic marker and said that he had left it there. McDade and a policeman escorted appellant back to the security office of the store and McDade told appellant that they were going to search his pockets. Appellant then pulled a Hi-Lighter marker from his rear pants pocket and said that he had brought it into the store to exchange it because it did not write properly. Appellant did not have a receipt and he offered to pay for the pen. McDade stated that the following day appellant came into the store and bought a Hi-Lighter pen. McDade further stated that a piece of plastic wrap from the package was attached to the clasp of the pen recovered from appellant.
Ted Arnett testified that he was Security Manager for Montgomery Ward in Mobile. Arnett testified that he was present on February 26, 1977 at the store when appellant had a conversation with the store manager. Appellant wanted to know if Mongtomery Ward planned to pursue the matter of the pen "legally." He did not want to be prosecuted.
Arnett further testified that he later received a call from a man who identified himself as Officer Burrell with the Mobile Police Department. The caller wanted to know "how everything's going on the George Clark case." Arnett identified the voice as that of appellant.
Ronald Dunavant and Bill Goodman testified on behalf of appellant. Both testified that they had seen appellant holding a yellow Hi-Lighter before he entered Montgomery Ward. Both also testified that they had seen appellant inquiring at a nearby bookstore whether or not they carried a similar item. *Page 680 
The offense of larceny involves the trespass on the possession of another, and is the felonious taking and carrying away of the personal property of another with the intent to convert it to the taker's own use. Woods v. State, 57 Ala. App. 1, 325 So.2d 517.
The loss of property by felonious taking may be proved by facts and circumstances as well as by direct and positive evidence. If the evidence affords an inference that larceny has been committed, as it does here, it is sufficient for the jury.Woods, supra. Where there is legal evidence from which the jury can by fair inference find the defendant guilty, the Court of Criminal Appeals has no right to disturb the verdict; whether there is such evidence is a question of law, with the weight and probative value for the jury. Woods v. State, Ala.Cr.App.,344 So.2d 1225; Williams v. State, Ala.Cr.App., 348 So.2d 1142.
This was a strong case of circumstantial evidence. It could be readily inferred by the jury that appellant shoplifted the Hi-Lighter pen.
A careful search of the record reflects no error injuriously affecting the substantial rights of appellant.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.