STATE OF INDIANA *v.* JERRY RAY BLACK; STATE OF INDIANA *v.* DONNA KAY CLARK

[No. 1-477A86. Filed September 27, 1978. Rehearing denied November 8, 1978. Transfer denied February 21, 1979.]

*Theodore L. Sendak,* Attorney General of Indiana, *Charles D. Rodgers,* Deputy Attorney General, for appellant.

*John D. Clouse,* of Evansville, *Michael C. Keating,* of Evansville, for appellees.

LYBROOK, P.J.—The State appeals from a trial court order which dismissed, on constitutional grounds, informations filed against defendants Jerry Ray Black and Donna Kay Clark. We reverse.

## FACTS

Vanderburgh County Ordinance 75-VC-1 was adopted on October 27,

1975, and provided both a detailed scheme of regulating "health clubs" (more commonly known as massage parlors) and provisions specifying penalties for violations of the substantive provisions of the ordinance. Basically, the ordinance requires that each massage parlor obtain a permit from the county prior to operation; the ordinance further requires that in order to obtain a permit to operate, the owner or manager of the health club must be "(1) a physician, (2) a registered nurse with at least two (2) years nursing experience, (3) a licensed practical nurse with at least four (4) years nursing experience or (4) a registered physical therapist." The ordinance also prohibits the performance of a massage upon a patron by a masseur or masseuse of the opposite sex, and requires that every masseur and masseuse obtain a permit.

On December 15, 1975, in a case unrelated to the case at bar, charges were filed against Linda Sue Buchanan (case #75-5942) and others, alleging that Buchanan *et al.* had violated various provisions of the ordinance here involved. On May 26, 1976, the Vanderburgh Superior Court dismissed these informations, holding the ordinance to be unconstitutional on the ground that it "does not meet the constitutional requirement of a prohibition of lewd or immoral conduct in health clubs as defined within said Ordinance." This order of dismissal, and the judgment therewith declaring the ordinance unconstitutional, were never appealed.

On July 30, 1976, Clark was charged with violating section 3(d)(1) of the ordinance by giving or offering to give a massage in a health club without first obtaining a permit. On that same day Black was charged with a violation of section 3(d)(1) and (2) of the ordinance by (1) owning or managing a health club without a valid permit, and by (2) maintaining and operating a health club in which a masseuse (Clark) did not have a permit was employed. Black and Clark subsequently filed motions to dismiss, which were sustained by the trial court. That court, in its order of dismissal, based its reasoning on its earlier decision in *State v. Buchanan* (75-5942).

Several issues have been raised for our review; due to our disposition of the case, we need discuss only the following:

(I)   Whether the trial court lacked jurisdiction to decide the present

case, on the ground that the Attorney General was not given adequate notice under IC 34-4-10-11;

(II)  Whether the State's brief complies sufficiently with the Indiana Appellate Rules of Procedure;

(III)  Whether the State is estopped from relitigating the constitutionality of the ordinance involved in view of the State's failure to appeal the dismissal of similar charges in the prior case of *State v. Buchanan;*

(IV)  Whether the present case can be prosecuted in the name of the State;

(V)  Whether an unpublished order of the United States Court of Appeals can be cited as authority in Indiana state courts, and whether such citation constitutes reversible error in the instant case;

(VI)  Whether the questioned sections of the ordinance involved are unconstitutional; and

(VII)  Whether the present defendants can assert as a defense in this action their alleged reliance upon the prior unappealed trial court decision in *Buchanan,* which held the ordinance involved herein unconstitutional.

I.

The State first contends that the trial court was without jurisdiction to dismiss the informations against Clark and Black since the Office of the Attorney General had not received notice of the fact that the defendants were challenging the constitutionality of the ordinance. The State argues that IC 34-4-10-11 requires a defendant to notify the Attorney General if that defendant seeks to contest the constitutionality of a local ordinance. The State further maintains that "The purpose of mandating that notice be given to the Attorney General, and for entitling the Attorney General to be heard is to enhance the quality of constitutional litigation." Defendants Clark and Black disagree with the State's assertions and reasoning.

IC 34-4-10-11, upon which the State relies in its argument that the Attorney General should have been notified of the trial court proceedings, actually is a section of the Uniform Declaratory Judgment Act. *See* IC 34-4-10-1 through 34-4-10-16. The section here involved, IC 34-4-10-11, reads as follows:

"When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. In any proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party, and shall be entitled to be heard, and if the statute, ordinance or franchise is alleged to be unconstitutional, the attorney-general of the state shall also be served with a copy of the proceeding and be entitled to be heard."

We hold that the defendants were not required to serve notice on the Attorney General before they could attack the constitutionality of the ordinance. The State's attempt to engraft the Uniform Declaratory Judgment Act onto existing procedure for prosecuting ordinance violations must fail. The Declaratory Judgment Act itself states at IC 34-4-10-15:

"This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it, and to harmonize, as far as possible, with federal laws and regulations on the subject of declaratory judgments and decrees."

We believe that the legislature, in adopting the Uniform Declaratory Judgment Act, did not intend that its provisions would apply to proceedings in which defendants are alleged to have violated local ordinances. Therefore, Clark and Black were not required to serve notice upon the Attorney General under IC 34-4-10-11.

## II.

Clark and Black first argue that the State has waived its alleged errors on the ground that its brief fails to comply with the Appellate Rules requiring that each appellate brief contain an argument. We have examined the State's brief and we hold that the State's brief contains sufficient argument to be in substantial compliance with the Appellate Rules. Therefore, we will proceed to consider the merits of the case.

## III.

Black and Clark next argue that the trial court could not reconsider, in the present case, the question of the constitutionality of the ordinance since (1) that court previously had determined in the *Buchanan* case that the ordinance was unconstitutional and (2) that decision was never

appealed. Thus, argue Black and Clark, the State is estopped from relitigating this issue, or is barred by the doctrines of *res judicata* or collateral estoppel.

We note first that Black and Clark's reasoning is inapplicable to the action of the trial court in this case; that court in fact did *not* reconsider its former position that the ordinance is unconstitutional; indeed, the trial court's decision in the present case was identical to that in the *Buchanan* case.

The real issue is whether the unappealed decision in the *Buchanan* case prevents the Court of Appeals from deciding for itself the constitutional questions involved in the case at bar. We hold that the doctrine of *res judicata*, collateral estoppel, and estoppel do not preclude this court from examining such constitutional issues in this situation. Although there appear to be no Indiana cases on point, we find it illogical that the failure of a party to appeal a decision regarding important constitutional issues somehow prevents an appellate court from reviewing those same issues in a separate case. Therefore, we hold that the doctrines of *res judicata*, estoppel, and collateral estoppel are inapplicable to the case at bar.

## IV.

The defendants next allege that the State is not the real party in interest in the present case; specifically, defendants contend that since the action alleges the violation of a county ordinance, the action must be brought in the name of the county.[1] Defendants quote Indiana Rules of Procedure, Trial Rule 17:

"(A) Real party in interest. Every action shall be prosecuted in the name of the real party in interest.

* * *

No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time after objection has been allowed for the real party in interest

---

1. By legislative enactment effective April 1, 1978, the position of the defendants has been codified at IC 17-2-2.5-9, which provides "All proceedings to enforce county ordinances shall be brought in the name of the county."

to ratify the action, or to be joined or substituted in the action. Such ratification, joinder, or substitution shall have the same effect as if the action had been commenced initially in the name of the real party in interest."

We need not discuss the issue raised by the defendants, for we hold that Vanderburgh County has sufficiently ratified the action within the meaning of TR. 17. Not only did the county file its motion to intervene, it also (1) filed a motion to set aside the trial court's judgment holding the ordinance unconstitutional; (2) filed a memorandum stating the reasons it wished to be heard in support of the ordinance; and (3) appeared and argued in favor of the constitutionality of the ordinance at a hearing in the trial court. We hold this to be sufficient ratification by the county to withstand the defendants' contention that the action was brought by the wrong party. The fact that the trial court subsequently dismissed the county from the case does not alter the fact that the county had appeared and adopted the position of the State as its own.

## V.

Black and Clark next argue that the State should not have been allowed to cite as authority in the trial court, nor in the court on appeal, an unpublished order of the United States Court of Appeals for the Seventh Circuit. This order affirmed the dismissal of a case wherein the constitutionality of ordinance 75-VC-1 was challenged and upheld.

Black and Clark argue that because the order of the Seventh Circuit cannot be cited in Federal Court[2] it also should not be cited in state courts.

This argument presents a somewhat novel point. However, we believe that an absolute ban in Indiana courts on the reference to unpublished

---

2. Rule 35 of the Rules of the United States Court of Appeals for the Seventh Circuit, formerly Rule 28, reads in its relevant parts:

"Unpublished orders:

* * *

(iv) Except to support a claim of *res judicata*, collateral estoppel or law of the case, shall not be cited or used as precedent (a) in any federal court within the circuit in any written document or in oral argument or (b) by any such court for any purpose."

U.S. court decisions is unwarranted. Rather, the more prudent course would be to allow the trial court, or appellate court, wide discretion in its determination of the weight, if any, to be given to these orders. Such orders may or may not be dispositive of particular issues in a given case; accordingly, the determination of which orders are relevant to a particular case will have to be made on a case by case basis.

In the case at bar we decline to accept the unpublished order as dispositive or as persuasive on the propositions decided therein; furthermore, the trial court apparently did not consider the order as authority, for its holding is contrary to the reasoning expressed in the Federal Court order.

## VI.

The defendants next allege that the ordinance involved is unconstitutional on various grounds. We hold sections 9 and 10 of the ordinance to be invalid; however, we reach our conclusion primarily on statutory grounds. The remaining sections of the ordinance we hold to be valid as against constitutional and statutory attack.

Sections 9 and 10 of the ordinance read as follows:

*"Section 9.  PROHIBITED ACTS IN VIOLATION OF THE LAWS OF THE STATE OF INDIANA AND THIS ORDINANCE, ETC.*

No owner or manager of a health club shall tolerate in his establishment any activity or behavior prohibited *by the laws of the State of Indiana,* particularly, but not exclusive of, those provisions of the Indiana Code referred to in Section 3, subsection (3) of this Ordinance and/or said Public Law No. 341 of the 1975 Acts of the Indiana General Assembly, the latter being the Indiana Statute on obscenity.

No owner or manager of a health club shall tolerate in his or her establishment any activity or behavior which violates this Ordinance.

*Section 10.  PENALTY.*

Any person violating the provisions of this Ordinance shall be fined not more than One Thousand Dollars ($1,000.00) and/or imprisoned not more than six (6) months." (Original empasis.)

We first note that on the face of these two provisions, the county apparently has attempted to impose an additional penalty on certain people who violate state statutes in connection with the operation of a massage parlor. For example, if a massage parlor owner or operator violated a state statute in the operation of his business, he also might be liable under section 9 of the ordinance for "tolerating in his establishment activity or behavior prohibited by the laws of the State of Indiana." Thus there could be one penalty under the statute, and an additional penalty under section of the ordinance. This double penalty violates the provisions of IC 17-2-2.5-3, which provide:

"A county may not exercise the following powers:
(1) The power to enact laws governing private or civil relationships.
(2) *The power to define and provide for the punishment of offenses, except that a county may define and provide punishment for the violation of ordinances, if:*
(A) *The conduct for which punishment is provided does not also constitute a violation of a statute; and*
(B) *The ordinance does not provide for imprisonment, or for a fine in excess of one thousand dollars ($1,000).*
(3) The power to require a franchise, certificate, or permit to operate any common or contract carriers of passengers or property, operating under the jurisdiction of the public service commission of Indiana." (Emphasis added.)

We hold that the county's attempted regulation (via section 9) of conduct which is also the subject of state statutes is in contravention of IC 17-2-2.5-3. Further, we also hold that the penalty of imprisonment provided in section 10 violates IC 17-2-2.5-3(2)(B), which clearly provides that the ordinance may not provide for imprisonment. Accordingly, we hold section 9 of the ordinance to be *ultra vires* and invalid in its entirety; we further hold, on the same grounds, that portion of section 10 which provides for imprisonment to be invalid. The provision providing for a fine remains effective, pursuant to the severability clause at section 12 of the ordinance.

The defendants next allege to be unconstitutional the remaining sections of the ordinance, which, *inter alia*, prohibit the giving of a massage to a member of the opposite sex; require permits to be issued only to

physicians, registered or practical nurses, or physical therapists; and prohibit the operation of a massage parlor without a permit. Clark and Black allege that such provisions violate several constitutional requirements. However, these arguments have been decided adversely to defendants in the recent case of *City of Indianapolis v. Wright* (1978), 267 Ind. 471, 371 N.E.2d 1298. Although the ordinance involved in that case did not provide for monetary penalties for its violation, we believe the reasoning of that decision is applicable here. It is stated in *Wright*:

> "Numerous state and federal courts have considered the constitutionality of similar ordinances. Even before certain recent developments, the prevailing view upheld their constitutionality. See, Annot. 51 A.L.R.3d 929 (1973). Recently, appeals from three state court decisions upholding the constitutionality of massage parlor ordinances have been dismissed by the United States Supreme Court for want of a substantial federal question. *Smith v. Keator*, (1974) 419 U.S. 1043, 95 S.Ct. 613, 42 L.Ed.2d 636, dismissing 285 N.C. 530, 206 S.E.2d 203; *Rubenstein v. Township of Cherry Hill*, (1974) 417 U.S. 963, 94 S.Ct. 3165, 41 L.Ed.2d 1136, dismissing No. 10,027 (N.J. Sup. Ct.) (unreported); *Kisley v. City of Falls Church*, (1972) 409 U.S. 907, 93 S.Ct. 237, 34 L.Ed.2d 169, dismissing 212 Va. 693, 187 S.E.2d 168. By virtue of the Supreme Court's decision in *Hicks v. Miranda* (1975) 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223, those dismissals are to be treated as dispositions on the merits of the issues raised. Lower federal courts are bound by the decisions of these summary dispositions. Lower federal courts which have since considered similar massage parlor ordinances have affirmed their constitutionality based upon these summary dispositions. *Colorado Springs Amusements v. Rizzo*, (3d Cir. 1975) 524 F.2d 571, cert. den. 428 U.S. 913, 96 S.Ct. 3228, 49 L.Ed.2d 1222 (Brennan, J., dissenting with opinion); *Hogge v. Johnson*, (4th Cir. 1975) 526 F.2d 833; cert. den. 428 U.S. 913, 96 S.Ct. 3228, 49 L.Ed.2d 1221 (Brennan, J., dissenting); *Cullinane v. Geisha House*, (D.C. App. 1976) 354 A.2d 515, cert. den. 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (Brennan, J., dissenting); *Tomlinson v. Mayor and Aldermen*, (5th Cir. 1976) 543 F.2d 570. It is therefore settled that the due process and equal protection provisions of the federal constitution are not violated by massage parlor ordinances as involved here.
>
> Jurisdictions other than those previously cited have also sustained similar ordinances against constitutional attack. *Thompson v. City of Huntsville*, (1976) 57 Ala. App. 607, 329 So.2d 664, cert. den. 295 Ala. 425, 329 So.2d 666; *Queilhe v. Lovell*, (1977) Nev., 560 P.2d 1348; *Ex parte Maki*, (1943) 56 Cal. App.2d 635, 133 P.2d 64

to the extent it is not overruled by *Lancaster v. Municipal Court,* (1972) 6 Cal.3d 805, 100 Cal. Rptr. 609, 494 P.2d 681 (invalidating an ordinance on state preemption grounds).

Having reviewed these decisions and their rationale, it is unnecessary to pursue the parties' various constitutional arguments for we are in agreement with the propositions and results of the overwhelming weight of authority which finds massage parlor ordinances prohibiting opposite sex massages to be constitutional."

In accordance with our Supreme Court's decision in *Wright,* we hold that the remaining portions of the ordinance do not violate constitutional guarantees of Equal Protection and Due Process; neither is the ordinance void for vagueness.

Black and Clark also allege that the ordinance is in violation of the Indiana Constitution, Article 4, § 22 and § 23. They contend that the conduct sought to be proscribed by the county ordinance is the subject of the following statutes: IC 35-1-89-1 (sodomy — now repealed); IC 35-45-4-1 (public indecency — new penal code); IC 35-1-83-3 (public indecency — now repealed); IC 35-45-4-2 (prostitution — new penal code); IC 35-30-1-1 (prostitution — now repealed); IC 35-30-10.1-3 (obscene performance). Citing *City of Indianapolis v. Wright, supra,* Black and Clark allege that since the legislature has acted to define and punish criminal conduct in these areas, a county is therefore prevented from enacting an ordinance carrying penal sanctions which covers the same subject matter as the statutes.

Defendants argue that in the *Wright* case the Supreme Court found the massage parlor ordinance not to involve the same subject matter as the above statutes for the reason that the Indianapolis municipal ordinance carried no "misdemeanor penalties" for its violation. Since the Vanderburgh ordinance does involve "misdemeanor penalties", argue the defendants, and since it does deal with the same subject matter as the above statutes, it is therefore an attempted local law, in violation of the Indiana Constitution, Article 4, §§ 22 and 23.

We disagree with the defendants' reasoning. We believe that because of IC 17-2-2.5-3, and the decision of this case, the present ordinance no longer provides for a penalty which is to be classified as a "misdemeanor" penalty. As we have discussed, *supra,* the ordinance cannot provide for

imprisonment. The monetary penalty remaining in section 10 we hold to be a civil penalty employed for the enforcement of the licensing plan, rather than a criminal sanction. Indiana case law previously has recognized the difference between civil penalties and criminal penalties. *See State v. The Indiana and Illinois Southern Railroad Co.* (1892), 133 Ind. 69, 32 N.E. 817. Accordingly, the ordinance, absent effective imprisonment provisions, presents an enforcement scheme which is civil in nature (henceforth the action will be maintained in the name of the county, see footnote 1, *supra*), and the ordinance here involved is now no more "misdemeanor" in nature than the ordinance involved in *Wright, supra.*

Citing *Cianciolo v. Members of the City Council of Knoxville, Tennessee,* 376 F. Supp. 719 (E.D. Tenn. 1974), Black and Clark also argue that the present ordinance violates 42 U.S.C. § 2000e-2(a)(1)-(2) and 42 U.S.C. § 2000e-7 (1964 Federal Civil Rights Act) and thus Art. 6 (the supremacy clause) of the U.S. Constitution. However, we must agree with our Supreme Court in *Wright, supra,* that because *Cianciolo* was previous to *Kisley v. City of Falls Church* (1972), 409 U.S. 907, 93 S.Ct. 237, 34 L.Ed.2d 169, dismissing 212 Va. 693, 187 S.E.2d 168, and because *Cianciolo* was previous to numerous other cases cited in the *Wright* case, we must assume that *Cianciolo*, which invalidated a similar massage parlor ordinance, is now overruled. *But cf. Stratton v. Drum,* 445 F. Supp. 1305 (D. Conn. 1978).

## VII.

Finally, and in connection with defendants' estoppel argument, *supra,* the question arises whether on remand the defendants are to be held liable for their conduct which occurred during a period of time when the ordinance they allegedly violated had been held unconstitutional in a prior case by the trial court. The issue presented is basically whether a citizen can rely on a trial court's judgment that a local ordinance is unconstitutional, when that judgment is not appealed. We believe such reliance is justified, as long as (1) the trial court involved had subject matter jurisdiction, and (2) the time for appeal has expired and no appeal is pending.

After time for the appeal in the *Buchanan* case had elapsed, the present defendants were charged with engaging in conduct that violated

the ordinance declared unconstitutional in *Buchanan*. We hold that the defendants were entitled to rely on the unappealed trial court judgment of the ordinance's unconstitutionality until the publication of this opinion to the contrary, and that they can assert such reliance as a defense upon remand.

Although there is apparently no Indiana case law on point, other jurisdictions have been faced with similar issues. In *Chavers v. Harrel, Sheriff* (1935), 122 Fla. 669, 166 So. 261, the Supreme Court of Florida stated that the defendant in a criminal action has the right

"to invoke the principle that a statute that is declared unconstitutional by a competent court is without force until the decision of the lower court is reversed by a higher court so as to preclude infliction of punishment for criminal violations of it, or the exaction of civil penalties for its nonobservance, during the time the judicial declaration of invalidity stood unreversed by the higher court."

Numerous other authorities reflect similar decisions and reasoning. *See State v. Bell* (1904), 136 N.C. 674, 49 S.E. 163, citing *Township v. State* (1898), 150 Ind. 168, 49 N.E. 961; *State v. Jones* (1940), 44 N.M. 623, 107 P.2d 324; *Durham v. United States*, (D.C. Cir. 1954), 214 F.2d 862; and *State v. O'Neal* (1910), 147 Iowa 513, 126 N.W. 454. Further cases are collected and discussed in Schaefer, The Control of "Sunbursts": Techniques of Prospective Overruling, 42 N.Y.U.L. Rev. 631 (1967).

The problem has been stated by LaFave, in *Criminal Law* (1972), § 47, p. 366 as follows:

"An individual should be able reasonably to rely upon a statute or other enactment under which his conduct would not be criminal, so that he need not fear conviction if subsequent to his conduct the statute is declared invalid . . . For essentially the same reason, the better view is that it is a defense that the defendant acted in reasonable reliance upon a judicial decision, opinion or judgment later determined to be invalid or erroneous [citing the Model Penal Code, § 2.04(3)(b), which so provides] . . . Under the majority view, reasonable reliance upon a decision of a lower court is likewise a defense. Thus, if the lower court has found a repealer statute constitutional, has declared the relevant criminal statute unconstitutional, or has enjoined enforcement of the statute, there may be a basis for reasonable reliance."

See also: *State ex rel. Williams v. Whitman* (1934), 116 Fla. 196, 156 So. 705.

Thus, we hold that the defendants may assert as a defense upon remand reasonable reliance upon the decision in the case of *State v. Buchanan et al.*, if such reliance was in fact present and can be demonstrated by the defendants' evidence.

For the reasons stated above the ordinance here involved is held to be invalid as *ultra vires* as to section 9, and that part of section 10 which provides for imprisonment; the remainder of the ordinance is henceforth in full force and effect.

This cause is reversed and remanded for trial, and for other action not inconsistent with this opinion.

Reversed and remanded.

Lowdermilk, J., concurs.

Young, J., (participating by designation), concurs in result.

NOTE — Reported at 380 N.E.2d 1261.